IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

QUENTRELL EUGENE WILLIAMS,

                Plaintiff,                              OPINION AND ORDER

    v.

                                                        18-cv-1008-wmc

DANE ESSER, *et al.*,

                Defendants.

*Pro se* plaintiff Quentrell Williams is proceeding in this lawsuit on Eighth Amendment claims related to an incident of excessive force by defendants and the repeated use of incapacitating agents despite Williams having a contraindicating asthma condition. Williams has five pending motions I resolve in this order. (Dkts. 56, 57, 58, 66, 79.)

**I.    First Motion to Compel (dkts. 57**

In his first motion to compel, Williams seeks an order compelling production of 10 categories of documents. I resolve each dispute as follows:

    1.    Williams requested defendant Esser's disciplinary record throughout his employment at the Wisconsin Secure Program Facility (WSPF). Defendants objected to that request, representing that Esser has not been disciplined for any issues related to incapacitating agents, excessive force, or strip searches, which related to Williams' claims in this lawsuit (and which *would* be discoverable); thus Esser's disciplinary history and/or personnel file are irrelevant to this action. Williams does not respond to this argument other than insisting that he has no way of knowing whether Esser's disciplinary record or personnel file may have relevant information if he does not review them. Discovery is not a fishing expedition; Williams must have some good faith basis to believe that these materials may lead to admissible evidence in this case. Since Williams has not explained why he believes the balance of Esser's

personnel file will lead to admissible evidence in this case, I will not compel defendants to produce Esser's disciplinary record or personnel file.

2. Williams requested policies and procedures related to the use of incapacitating agents on inmates with contraindications. Defendants have made the policies available to Williams through the litigation coordinator at Waupun, and even though they object to Williams possessing hard copies of policies in his cell due to security concerns, they represented that they would provide Williams a copy of the policy related to the use of incapacitating agents for inmates with contraindications (Wis. Admin. Code § DOC 306.09) due to the COVID-19 protocols limiting his access to the law library. Williams claims that due to institutional lockdown since March 2020, he has been limited to a 30-minute review of the remaining policies, which he says is insufficient and burdensome. Yet Williams does not deny that he has been able to review the policies, and he does not deny that defendants provided a copy of § DOC 306.09, and he does not explain in detail how the time he has been provided is not sufficient for his purposes. If Williams needs more time to review the policies than the institution is allowing him to review, then he should alert defense counsel, but Williams has not identified a basis for the court to require defendant to produce the policies in hard copy.

3. Williams sought his medical and psychological records from defendants dating from 2011 to the present, and Williams complains that defendants did not provide documentation from 2011 that memorialized the finding of his contraindication for incapacitating agents. Defendants respond that they produced Williams' medical and psychological records from January 1, 2012, through December 31, 2013, on August 27, 2020, and they further represent that they do not have other records beyond this time frame. In reply, Williams insists that the DOC likely has the documents, pointing out that on another occasion when Williams reminded counsel of documents produced in another of his lawsuits, *Williams v. Lentz*, No. 14-cv-312-

2

wmc, they were able to locate responsive documents. Williams has a point: my review of that case shows that Williams submitted as an attachment to his complaint in that case a document classifying him with a contraindication to incapacitating agents. *Id.*, dkt. 1-1, at 6. The clerk of court is directed to provide Williams a copy of his complaint in his '312 case, along with the attachments to that complaint. I will not compel defendants to produce any more of Williams' medical or psychological records, but I remind them of their ongoing obligation to supplement discovery and to take take reasonable steps to investigate Williams' discovery requests, especially given Williams' limited access to legal materials.

4. Williams requested all incident reports involving Williams from January 2012 through December 2013, arguing that all incident reports are relevant to his theory that defendants had a common practice of spraying him. Defendants have produced all incident reports and other responsive documents from the time frame associated with his claims in this lawsuit (from March through June 2013). Defendants' position is that earlier incidents are not relevant and inadmissible other act evidence, *see* Fed. R. Evid. 403, 404. I agree with defendants that these incident reports may very well be inadmissible at trial for that reason, but Williams claims that he wants to develop a theory that there was a pattern or practice of singling him out for the use of incapacitating agents. This is a valid discovery request, but only insofar as defendants are named in the incident reports. Accordingly, I will direct defendants to produce all of the incident reports that involve Williams and any of the defendants in this lawsuit, from January 2012 through December 2013.

5. Williams requested all "emails, memorandums, letters, notes, reports, (investigative or otherwise) regarding the Plaintiff from October 2011 to December 2013," and defendants objected on the basis that the request is overbroad. However, defendants produced Williams all such communications regarding March - June 2013 incidents at issue in this case. Williams

maintains that communications from the broader time period may lead to admissible evidence related to his claims, but he does not begin to explain how communications mentioning him may produce evidence relevant to his Eighth Amendment claims. Accordingly, I will not compel defendants to produce any additional documents in response to this request.

6. Williams requested production of DAI Policy 306.00.20, and has been told he has to make an appointment with the litigation coordinator to review the policy. The parties' arguments with respect to this request are the same as #2 above, and for the same reason, I will not require defendants to produce the policies.

7. Williams requested DAI Policy 500.30.04. Defense counsel produced the wrong policy by mistake but has corrected that mistake. This issue is moot.

8. Williams requested Wis. Admin. Code § DOC Ch. 306, and defendants responded by asking Williams to provide a more specific request, but also notifying him that he could review the that code chapter in the law library at Waupun. Although Williams did not narrow his request, defense counsel indicated they would produce the code chapter. This issue is moot.

9. Williams requested the manufacturer's recommendations and instructions regarding the use of pepper/OC launcher, Mark, Mark incapacitating agents and taser. Defendants objected on relevance grounds, but then upon further investigation, institution staff members informed defense counsel that they have not been able to locate manufacturer's recommendations or instructions for these devices from 2013. As such, defendants' position is that they do not possess these documents. Williams doubts defendants' representation that these documents are not in their possession, but his position is based on conjecture. Accordingly, I will not compel defendants to produce any documents in response to this request.

10. Williams requested a copy of Wis. Stat. § 302.07. Defense counsel misread this request and produced the wrong statute but indicates that defendants will provide the correct statute to Williams. This issue is moot.

## II.     Second Motion to Compel (dkt. 66)[1]

In Williams's more recent motion to compel, he seeks an order requiring defendants to provide proper responses to certain interrogatories. (Dkt. 66.) Williams' motion is difficult to read, but it appears that he takes issue with defendants' responses to interrogatory Nos. 2, 3, 4, 5, 6, 8, 9, 10, 11, and 13. He represents that he wrote to defendants about his concerns, and they did not respond, attaching a letter dated November 3, 2020, in which he wrote that defendants' objections were improper. (*See* dkt. 66-1.)

Defendants oppose the motion on the grounds that Williams failed to demonstrate a good faith attempt to resolve the dispute informally before filing his motion. In particular, beyond disagreeing with defendants' objections to his interrogatories, Williams did not identify with particularity why their responses were evasive or incomplete. Defense counsel indicates willingness to address Williams specific concerns and represents that he sent Williams a response letter dated November 13, 2020, asking Williams to provide details about why the interrogatory responses were incomplete. In reply, Williams claims that it is defendants' burden to explain their objections. Because it is apparent that Williams has not actually detailed his specific objections to defense counsel, I am denying this motion to compel as premature.

---

[1] Williams also has filed a motion seeking to re-file his reply brief in support of this motion (dkt. 79), which I grant.

## II. Emergency Motion for a Court-Appointed Expert (dkt. 56)

Federal Rule of Evidence 706 allows a court to appoint a neutral expert when doing so is necessary to help the court or the jury "interpret complex information." *DeJesus v. Godinez*, 720 F. App'x 766, 772 (7th Cir. 2017). Williams asks that the court appoint an expert because he will need an expert witness to provide testimony related to (1) the appropriateness of using incapacitating agents on individuals with contraindications for such substances, (2) the health risks associated with spraying incapacitating agents, and (3) whether a lay person would or should know in effect of using incapacitating agents on individuals with contraindications. Williams explains that he is indigent and lacks resources necessary to retain an expert on his own.

I am denying this motion without prejudice. As a threshold matter, there are no federal funds available for experts in civil cases, so Rule 706(c) allows the court to apportion the costs between the parties. *See Goodvine v. Ankarlo*, No. 12-cv-134-wmc, 2013 WL 1192397, at *2 (W.D. Wis. Mar. 22, 2013) (requiring pro se prisoner to pay a portion of the costs based on the amount in his trust fund account). If the court were to appoint a neutral expert, it would tax Williams a certain percentage of the cost based on the amount of money Williams has in his prison trust fund account. I do not know Williams' current financial situation, but given that he is proceedings *in forma pauperis* in this lawsuit, I infer that he is indigent and may not want to devote his limited resources to paying for a court-appointed expert.

Even assuming Williams might be willing to pay his share of the cost of a neutral expert, it is very difficult to find expert witnesses willing and able to assist. That said, the court will do whatever justice requires. At this juncture, at least, the court concludes that it is not necessary to appoint a neutral expert.

6

The court appoints expert witnesses only in circumstances in which the court needs an expert to help resolve disputed issues. Here, Williams is proceeding on Eighth Amendment excessive force claims related to defendant Esser's use of incapacitating agents; an Eighth Amendment deliberate indifference claim related to defendant Lentz's decision to give him a glass nasal spray despite Williams being at risk of harming himself; and Eighth Amendment failure to intervene claims related to the remaining defendants' failure to prevent Esser from using incapacitating agents against Williams. Each of these claims hinges largely on the operative facts, in particular the individual knowledge and motivations of the defendants. It is not apparent that Williams' needs an expert to survive summary judgment. Accordingly, I am denying Williams' motion without prejudice. Williams may renew this request if this case should proceed to trial and if he also can explain more specifically what role an expert would serve to help him prove his claims.

III. Motion for Reconsideration of Order Denying Motion for Assistance in Recruiting Counsel (dkt. 58)

Williams seeks reconsideration of Judge Conley's order denying without prejudice his motion for assistance in recruiting counsel. I take this to be a renewal of his request for assistance in recruiting counsel. Judge Conley denied Williams's request because Williams's submissions demonstrate a clear understanding of the facts and legal standards applicable to his claims. Although Williams explained that he had very little access to law library time and little time to review certain policies due to the restrictions on movement at Waupun related to COVID-19, it appeared that Williams had some access to these materials and that he could seek an extension from the court if he needed one. Williams seeks reconsideration of this decision, claiming that he has *no* access to the law library or the materials defendants made

7

available. However, as noted above, Williams' submissions indicate that he has been able to access the policies he requested from defendants (*see* dkt. 57, ¶ 9), so it appears Williams has had at least some access to the materials he claims he cannot access. It also appears that Williams has access to legal resources, given that he cites applicable case law in his submissions related to his motions to compel. (*See* dkts. 57, 65, 80.) Furthermore, Williams just responded to defendants' motion for summary judgment, citing legal authorities, submitting his own proposed findings of fact, and attaching evidence in the form of his own declaration and documents. (Dkts. 81-84.) As such, although his institution may still be operating under lockdown procedures, there is no basis to conclude that Williams is unable to litigate this case without an attorney.

Finally, I have reviewed Williams submissions in this case and in his other case pending before Judge Conley, *Williams v. Haure*, No. 18-cv-730-wmc, in which Williams is pursuing similar discovery motions. I see no basis to conclude that Williams cannot litigate this case without the help of an attorney. As Judge Conley previously noted, and as I have noted in Williams's '730 case, Williams is an aggressive litigator and his discovery motions demonstrate a clear command of the relevant legal standards and Federal Rules of Civil Procedure. Therefore, I see no basis to recruit counsel for Williams at this point and am denying this motion without prejudice to Williams ability to renew it before Judge Conley.

ORDER

IT IS ORDERED that:

1. Plaintiff Quentrell Williams' emergency motion to appoint and expert, motion and for reconsideration (dkt. 56, 57, 58) are DENIED without prejudice.

2. Plaintiff's emergency motion to compel (dkt. 57) is GRANTED in part and

DENIED. It is GRANTED insofar as defendants shall produce, within three weeks of the date of this order, all incident reports involving plaintiff and any of the defendants dated between January 2012 and December of 2013. It is DENIED in all other respects.

3. Plaintiff's motion to compel (dkt. 66) is DENIED

4. Plaintiff's motion to resubmit reply brief in support of motion to compel (dkt. 79) is GRANTED.

5. The clerk of court is directed to send plaintiff a copy of the complaint and attachments from *Williams v. Lentz*, No. 14-cv-312-wmc, along with a copy of this order.

Entered this 11th day of January, 2021.

BY THE COURT:

/s/

_____
STEPHEN L. CROCKER
Magistrate Judge