IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

QUENTRELL WILLIAMS,

                Plaintiff,                      OPINION AND ORDER

v.

                                                18-cv-1008-wmc

CHAD LENTZ,

                Defendant.

---

*Pro se* plaintiff Quentrell Williams is proceeding to trial against defendant Chad Lentz, claiming that on March 3, 2013, Lentz responded to the risk that Williams would commit serious self-harm with deliberate indifference in violation of the Eighth Amendment. In advance of the final pretrial conference to be held on June 14, 2021, the court issues the following opinion and order on the parties' motions *in limine* and related matters, as well as circulates proposed orientation remarks, voir dire, jury instructions and a special verdict.

OPINION

**I. Plaintiff Williams' Motion in Limine (dkt. #97)**

For the most part, Williams makes general requests in his motion, essentially reserving his right to object to witnesses that had not been timely disclosed, to hearsay and character evidence, and to evidence lacking foundation or not already disclosed. Both sides certainly may raise these objections as appropriate, so that request is DENIED AS MOOT. More importantly, both sides are encouraged to raise *any* of these objections as to specific

witnesses and exhibits *in advance of trial*, if possible, so that the court can provide a considered ruling, rather than while the jury is waiting for us to proceed.

Williams also requests to include "other acts evidence" with respect to Dane Esser and other WSPF employees' use of incapacitating agents. Williams appears to intend to use this evidence to show a pattern of improper use of incapacitating agents. However, at summary judgment, the court dismissed Williams' claims challenging the use of incapacitating agents against him on other dates. Therefore, any evidence beyond the use of incapacitating agents against him on March 3, 2013, to show a policy or practice related to the use of such agents, will be excluded as irrelevant, confusing and unduly prejudicial. Accordingly, Williams' motion in limine is GRANTED IN PART and DENIED IN PART.

**II. Defendant Lentz's Motion in Limine (dkt. #107)**

Defendant Lentz seeks five orders. *First,* Lentz seeks an order excluding evidence of the other incidents in this lawsuit that were dismissed at summary judgment. In particular, the court granted summary judgment with respect to the following claims: an Eighth Amendment claims against Dane Esser for using OC spray to control Williams on March 3, May 25 and June 29, 2013, and tasing him on June 25, 2013, as well as Eighth Amendment claims against Tim Haines, Sarah Blume, Beth Edge and Angela McClain for failing to intervene in Esser's uses of force.

With the exception of Esser's use of OC spray on March 3, 2013, reference to those claims and the events surrounding those claims is irrelevant and would unduly prejudice the remaining defendant, Chad Lentz. However, given that the March 3, 2013, use of OC spray immediately followed Williams' self-harm, Esser's used of OC spray on Williams that

2

day may be relevant to the extent it contributed to the injuries Williams sustained as a result of being allowed to self-harm. Accordingly, the court will GRANT IN PART and DENY IN PART this request: Williams may introduce evidence related to events that took place related to his self-harm on March 3, 2013, but he may not introduce evidence with respect to any events that took place other than on March 3, 2013.

*Second*, Lentz seeks an order excluding reference to Lentz's personnel history, details of other legal proceedings involving Lentz, or any inmate grievances against Lentz, except those made by Williams related to this case. Lentz's position is that this evidence is irrelevant; and even if relevant, it would be unfairly prejudicial, tend to confuse the jury and waste time during trial. Additionally, Lentz argues that evidence that Lentz wronged inmates in the past is inadmissible under Federal Rule of Evidence 404, unless such evidence would be admissible under Rule 404(b), to show his "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." *Id.*

Williams has not responded to this motion. The Seventh Circuit has adopted a four-part test to determine whether "other acts" evidence is admissible under Rule 404:

> First, proof of the other act must be directed towards establishing a matter in issue other than the defendant's propensity to commit like conduct. Second, the other act must be of recent vintage and sufficiently similar to be relevant to the matter in issue. Third, there must be a sufficient amount of evidence for the fact finder to conclude that the similar act was committed. And fourth, the probative value of the evidence must not be outweighed by the danger of unfair prejudice.

*Okai v. Verfuth*, 275 F.3d 606, 610-11 (7th Cir. 2011). Since Lentz represents that there are no known judgments against him in any lawsuits filed by an inmate, the only potentially admissible evidence of this nature would be an *affirmed* inmate complaint

3

finding that Lentz mishandled an inmate's threat of self-harm. Given the possibility that Williams may still be able to come forward with a proffer of evidence that might satisfy the four requirements for admissibility under Rule 404(b), the court will RESERVE on whether Williams is completely precluded from admitting evidence of *any* inmate complaints in which Lentz was found to have mishandled an inmate's threat of self-harm.

Thus, this motion is GRANTED IN PART and RESERVED IN PART. At the final pretrial conference, Williams will be given one last opportunity to make a specific proffer as to other affirmed inmate complaints finding Lentz acted with deliberate indifference under circumstances similar to that here *and* relevant to show motive, intent, preparation, plan, absence of mistake, or lack of accident under Rule 404(b). Failing that, all such evidence will be excluded.

*Third*, Lentz asks the court to exclude details of any other lawsuits against the Wisconsin Department of Corrections or its current or former employees, also citing Federal Rule of Evidence 404(b). Williams does not object to this request, so it will be GRANTED.

*Fourth*, Lentz seeks exclusion of any argument, questions, testimony or evidence regarding the causation of physical injury, permanence, future care and treatment, or future pain and suffering, other than that presented by Williams' himself. Williams also does not object to this motion, so it, too, is GRANTED.

*Fifth*, under Federal Rule of Evidence 609(a)(1)(A), Lentz seeks an order allowing him to impeach Williams during cross-examination, with two questions about criminal convictions. Williams was convicted of one count of Robbery with Use of Force, a class E

Felony level offense, in violation of Wis. Stat. § 943.32(1)(a), and Throw/Discharge Bodily Fluid at a Public Safety Worker, a class I Felony level offense, in violation of Wis. Stat. § 941.375(a). These offenses are punishable by imprisonment for more than one year, and it has not been 10 years since Williams was released from confinement for these convictions. Therefore, Lentz specifically seeks to ask the following questions: (1) "You have been convicted of one count of Robbery with Use of Force"; and (2) "You have been convicted of one count of Throwing or Discharging Bodily Fluid at a Public Safety Worker." Williams does not object to these questions. Accordingly, this motion is GRANTED.

II.     **Voir Dire, Jury Instructions and Special Verdict**

Attached to this order are the court's proposed voir dire, jury instructions and special verdict form. The court anticipates that the trial will not be bifurcated. The court will discuss these materials with the parties during the final pretrial conference.

III.    **Exhibits**

Defendant disclosed three exhibits: Exhibits 501 and 502 are incident reports from May 3, 2013, authored by defendant Lentz and Officer Foley, respectively; and Exhibit 503 is an excerpt of Williams' medical records. Williams has not objected to these exhibits.

Williams' exhibit list included: all defendants' interrogatory responses; defendants' responses to requests for admissions; Williams' medical records; incident reports from March 3, May 25, June 25, and June 29, 2013; defendants' response to plaintiff's

additional proposed findings of fact in opposition to defendants' motion for summary judgment; video exhibits (Def. Exs. 1005-1009); a photograph (Def. Ex. 1010); defendants' declarations; and DAI Policies ##306.07.01, 306.07.03. (Dkt. #109.) Lentz objects to portions of each of these categories of documents, which the court addresses in turn.

Starting with defendants' interrogatory responses and responses to requests for admissions, the court has dismissed defendants Esser, Haines, Blume, Edge and McClain from this lawsuit. Therefore, defendants object to admission of these former defendants' discovery responses as irrelevant and hearsay. With the exception of the responses of Esser and Blume, these objections are well-taken, so the court will exclude their discovery responses from evidence. As for Esser and Blume, however, if either of these witness's actually testify at trial in a manner inconsistent with any of their sworn discovery responses, Williams may be able to impeach them with statements that they made in their discovery responses under Federal Rule of Evidence 801(d)(1)(A).

Lentz also objects to his own responses and admissions to discovery responses. While Lentz agrees that Williams may impeach Lentz with his discovery responses, he maintains that they should not be admitted as evidence because they contain legal arguments and objections. However, any factual statements or admissions Lentz made in his discovery responses are admissible under Federal Rule of Evidence 801(d)(2). Therefore, although Williams would be better served simply asking Lentz to testify to his discovery responses, the court will not order them excluded at this point. Still, if Williams seeks to offer specific, written statements into evidence, he will need to redact any legal

6

arguments or objections from the discovery responses. Accordingly, this objection is GRANTED IN PART and DENIED IN PART.

As for Williams' medical records, Williams does not specify the dates of the records he would like to admit, and Lentz rightly objects to introducing all of Williams' medical records on relevance grounds. Medical records created on or after the March 3, 2013, self-harm incident are arguably relevant to Williams' damages up to a point, and defendants propose using Exhibit 503 at trial, which is an excerpt of Williams' medical records related to the March 3, 2013, incident. The court would be open to Williams including more medical records, provided that any additional medical records have some relationship to the injuries Williams actually suffered from the March 3, 2013, event at issue. Accordingly, the court will RESERVE on this issue, for further discussion during the final pretrial conference. Williams should come prepared to proffer the portions of his medical records that he would like to introduce, in addition to those contained in Exhibit 503.

As for the incident reports, Lentz obviously does not object to the admission of the two incident reports created following Williams' March 3, 2013, self-harm incident, since they are also defendant's Exhibits 501 and 502. The court agrees that incident reports from May 25, June 25, and June 29, 2013, do not contain relevant information. Accordingly, the court will admit Exhibits 501 and 502, but exclude from evidence any other incident reports.

Lentz also objects to admission of his response to plaintiff's proposed findings of fact, since the majority of the information in this document is not evidence, but argument. The court agrees, so these responses will be excluded. At the same time, Williams may be

7

able to use the underlying evidence cited in defendants' response at trial. However, any response itself is inadmissible.

As for the video and photographic exhibits Williams lists, the video footage exhibits plaintiff wishes to introduce shows events that occurred on June 25 and 29 of 2019. Williams also seeks to introduce a photograph (Exhibit 1010) that shows Williams' injuries after he was hit was a pepper ball launcher on June 29, 2013. Since none of these exhibits relates to the events that took place on March 3, 2013, or injuries Williams suffered that day, these exhibits will be excluded from evidence.

Lentz also objects to the use of defendants' declarations at trial. The two defendants who filed declaration in this case are Lentz and former defendant Dane Esser. To the extent Lentz is objecting to the admission of his own declaration, it is admissible under Rule 801(d)(2)(A). Williams does not specify which other declarations he intends to admit, while Lentz objects to the use of any dismissed defendant's declaration. However, Esser's declaration includes events that took place on May 3, 2013, since he was responsible for extracting Williams from his cell that day to interrupt his self-harm. Thus, Williams may impeach Esser with his statements from his declaration *if* his testimony is inconsistent with those statements under Rule 801(d)(1)(A). Accordingly, this objection is OVERRULED IN PART.

Finally, Lentz objects to admission of DAI Policy ##306.07.01 and 306.07.03 because both policies relate to Use of Force and Commercial Tools for Use of Force. Since Williams' claim against *Lentz* does not involve the use of force, these policies are not relevant. Although the jury may hear evidence related to force used to remove Williams

from his cell on March 3, admitting into evidence policies governing how prison officials should use force is only likely to confuse the issues actually before the jury. Accordingly, the court ACCEPTS this objection, and these policies will be EXCLUDED from evidence.

## IV. Witnesses

Williams also listed the following proposed witnesses in the same document in which he listed his exhibits: Nurse Practitioner Vander Galen, John Doe inmates 1-3, and Raynard Jackson. (Dkt. #109.) However, Williams has not followed this court's procedures for calling these witnesses, which was set forth in the trial preparation order. (Dkt. #100.) At minimum, these procedures require Williams to: identify whether each proposed witness will appear voluntarily, whether each witness is currently incarcerated, and if so, what relevant information the incarcerated witness would testify about. In addition, for unincarcerated witnesses who are unwilling to appear voluntarily, Williams was required to represent whether (1) he could make arrangements for service of the subpoena *and* (2) he was prepared to tender a check or money order made payable to the witness in the amount necessary to cover daily witness fees and mileage. (*Id.* at 18-20.) The court set June 1, 2021, as the deadline for Williams to petition the court for the appearance of incarcerated witnesses, or to ask the court to issue a subpoena for witnesses (incarcerated or unincarcerated) unwilling to appear voluntarily. (*Id.* at 16.) Williams did not provide this information for any of his proposed witnesses, and Lentz further objects to these witnesses. With one potential exception, the court SUSTAINS Lentz's objections.

Starting with the Doe witnesses, Williams represents that they were located in observation cells #401-404 on June 29, 2013, and March 1-4, 2013. Williams is not proceeding on any claims related to events that took place on June 29, 2013, so no witnesses to events from that day are necessary. As for the individuals located in cells #401-404 on March 1-4, 2013, Lentz objects since Williams provides no information about these individual's identities, much less whether these individuals have agreed to testify in this case. Moreover, it does not appear Williams has previously sought discovery related to these individuals, has not explained why he did not seek out this information earlier, and in any event, has not detailed what these individuals may know. Since Williams has not shown good cause for failing to obtain the *identities* of these individuals earlier during discovery -- much less for failing to follow the court's procedures for calling unincarcerated witnesses -- the court SUSTAINS Lentz's objection to these witnesses.

As for Nurse Practitioner Vander Galen, Williams represents that she could testify about the level of care provided, and "why she placed a contra-indication to incapacitating agents into my medical chart." (Dkt. #109.) However, Williams does not represent whether this witness would appear voluntarily, whether he is prepared to arrange for payment of the costs associated with her testimony at trial, or most importantly, whether she has information relevant to the events that took place on *March 3*, 2013. Indeed, based on Williams' submission, it appears that the only information this witness could provide goes to his contra-indication for incapacitating agents, but Williams is not proceeding to trial on a claim related to his contra-indication to incapacitating agents. Therefore, the court SUSTAINS Lentz's objection to this witness as well.

Finally, as for Raynard Jackson, the court understands Jackson to be incarcerated at Waupun Correctional Institution. Yet Williams has represented neither that Jackson will testify voluntarily, nor that he could testify about the events that occurred on March 3, 2013. If Jackson is willing and able to testify about relevant events, the court would consider allowing him to testify via videoconference. Thus, the court will also take up this issue during the telephonic final pretrial conference, although Williams should come prepared to represent whether Jackson will testify voluntarily, as well as the nature of Jackson's testimony.

### VII. Defendant Lentz's motion for witnesses to appear via videoconference (dkt. #111)

Relatedly, defendant asks that witnesses Christpher Foley and Sarah Blume be allowed to testify via videoconference, out of concern for the pandemic procedures in place for trial. Defendant represents that each witness's testimony will be brief, adding that allowing them to testify via videoconference will enable them to maintain their regular work duties. Agreeing that their appearance via videoconference will not only help ensure that the court can maintain social distancing measures, but reduce strain on staff at the institution, that motion is GRANTED. Defense counsel should coordinate with the clerk's office and the court's IT department to arrange for a robust videoconference connection, and during the final pretrial conference, the court will discuss the timing of witnesses appearing via videoconference.

ORDER

IT IS ORDERED that:

1) Plaintiff Quentrell Williams' motion in limine (dkt. #97) is GRANTED IN PART and DENIED IN PART as set forth above.

2) Defendant Chad Lentz' motion in limine (dkt. #107) is GRANTED IN PART, DENIED IN PART, and RESERVED in part, as set forth above.

3) Defendant's motion for his witnesses to appear via videoconference (dkt. #111) is GRANTED.

Entered this 11th day of June, 2021.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge